| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO. 1:20-CR-22(1) |
| | § | |
| PAUL ANDREW CABIRO | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Paul Andrew Cabiro's ("Cabiro") pro se Request for Early Termination of Supervised Release (#58) wherein Cabiro seeks early termination of his three-year term of supervised release. Cabiro's United States Probation and Pretrial Services ("Probation") Officer in the Eastern District of Texas prepared a report for the court's consideration. The report indicates that Cabiro's supervising Probation Officer in the Southern District of Texas expressed no objections to the early termination request and that the Government is also unopposed. His Probation Officer in the Eastern District of Texas, however, is opposed to the early termination of Cabiro's supervised release and recommends that his supervision be continued as ordered. Having considered the motion, the viewpoints of Probation in the Southern and Eastern Districts of Texas, the Government's position, the record, and the applicable law, the court is of the opinion that Cabiro's motion should be denied.

I.  Background

On March 4, 2020, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned a two-count Indictment against Cabiro charging him in Count One with Possession with the Intent to Distribute a Controlled Substance—lysergic acid diethylamide ("LSD"); 3,4-methylenedioxymethamphetamine ("MDMA"); cocaine HCl; heroin; and fentanyl, in violation of 21 U.S.C. § 841(a)(1), and in Count Two with Possession of a Firearm in

Furtherance of a Drug Trafficking Offense (#6). On December 2, 2020, Cabiro pleaded guilty to the offense charged in Count One of the Indictment, pursuant to a binding plea agreement (#43). On March 24, 2021, the court sentenced Cabiro pursuant to the plea agreement to a term of 70 months' imprisonment as to Count One, to be followed by a three-year term of supervised release (#56). On February 9, 2024, Cabiro began serving his term of supervised release in the Southern District of Texas, which is projected to expire on February 8, 2027.

In his motion, Cabiro, age 44, asks the court to terminate his supervision at this time, having served almost two years of his three-year term of supervised release. In his motion, Cabiro maintains that since the beginning of his supervision, he has complied fully with all terms and conditions of supervised release, including reporting, payments, and program requirements. He asserts that he has maintained steady employment since he arrived at the halfway house, working at Williams Brothers Construction, Aerotek, and Integra Mission Critical. He has submitted written character references from three of his supervisors. Cabiro further claims that he has strengthened his family relationships and built a stable support system. He has also provided a letter of support from his brother which addresses his growth and responsibility. Cabiro states that he has remained law-abiding and drug-free, focusing on his career and future. He adds that he has obtained his TWIC ("Transportation Worker Identification Credential") card after many attempts, which demonstrates his persistence and ability to meet federal security standards.

II.  Analysis

Title 18, United States Code, Section 3583(e) authorizes a district court to terminate supervised release at any time after the expiration of one year if, after considering certain of the

factors set forth in Section 3553(a),[1] "it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1); *accord United States v. Johnson*, 529 U.S. 53, 59-60 (2000); *United States v. Peters*, 856 F. App'x 230, 233 (11th Cir. 2021); *Herndon v. Upton*, 985 F.3d 443, 446 n.5 (5th Cir. 2021); *United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020); *United States v. Cochran*, 815 F. App'x 361, 363 (11th Cir. 2020); *United States v. Davies*, 746 F. App'x 86, 88-89 (3d Cir. 2018). In addition, the United States Sentencing Guidelines list supplemental factors that the court may wish to consider when determining whether to terminate the remaining term of supervised release.[2] "Early termination of supervised release is not an entitlement." *United States v. George*, 534 F. Supp. 3d 926, 927 (N.D. Ill. 2021). Instead, the defendant bears the burden of demonstrating that early termination is warranted. *Id.*; *United States v. Luna*, No. 1:95-cr-05036-AWI, 2018 WL 10156108, at *1 (E.D. Cal. Mar. 12, 2018), *aff'd*, 747 F. App'x 561 (9th Cir. 2018). Early

---

[1] These factors include: the nature and circumstances of the offense and the defendant's history and characteristics; the need to afford adequate deterrence to criminal conduct; the need to protect the public from further crimes of the defendant; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable Sentencing Commission guidelines and policy statements; any pertinent policy statement of the Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense. 18 U.S.C. §§ 3553(a), 3583(e).

[2] Specifically, the Guidelines list: (i) any history of court-reported violations over the term of supervision; (ii) the ability of the defendant to lawfully self-manage (*e.g.*, the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges); (iii) the defendant's substantial compliance with all conditions of supervision; (iv) the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision; (v) a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and (vi) whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant. U.S.S.G. § 5D1.4, Application Note B.

termination "is not warranted as a matter of course." *United States v. Morris*, No. 3:99-cr-264-17 (VAB), 2022 WL 3703201, at *3 (D. Conn. Aug. 26, 2022). "To the contrary, it is only 'occasionally' justified." *United States v. Shellef*, No. 03-CR-0723 (JFB), 2018 WL 3199249, at *1 (E.D.N.Y. Jan. 9, 2018) (quoting *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)). In fact, in *United States v. Bowe*, the United States Court of Appeals for the Fourth Circuit stated that "Congress has manifested an intent to require full service of supervised release for rehabilitative purposes." 309 F.3d 234, 240 (4th Cir. 2002) (citing *Johnson*, 529 U.S. at 53).

Although the Government and the Probation Officer in the Southern District of Texas do not oppose early termination, this fact, standing alone, is insufficient to justify granting Cabiro's request for early termination of his three-year term of supervised release. *See, e.g.*, *United States v. Boyd*, 606 F. App'x 953, 960 (11th Cir. 2015) ("Just as a federal prosecutor or probation officer cannot dictate a district court's sentence, they likewise do not call the shots concerning a court's decision whether to terminate early a term of supervised release. A criminal sentence is the court's sentence, not the prosecutor's and not the probation officer's."); *United States v. Lynn*, No. S90-00053(P), 2022 WL 2446328, at *3 (S.D. Miss. May 31, 2022) (finding that although the Government and Probation did not oppose early termination, that fact, standing alone, was insufficient to justify granting the defendant's request for early termination of supervised release); *United States v. Hartman*, No. 3:00-cr-228-B(01), 2013 WL 524257, at *1 (N.D. Tex. Jan. 18, 2013) (denying defendant's request for early termination of supervised release despite the Government's recommendation that it be granted), *adopted by* 2013 WL 540490 (N.D. Tex. Feb. 13, 2013); *United States v. Grimaldi*, 482 F. Supp. 2d 248, 249 (D. Conn. 2007) (denying early termination even though the defendant's probation officer supported it).

District courts enjoy considerable discretion in determining when the interest of justice warrants early termination. *United States v. Tacker*, 672 F. App'x 470, 471 (5th Cir. 2017); *United States v. Jeanes*, 150 F.3d 483, 484-85 (5th Cir. 1998); *United States v. Lynn*, No. S90-00053(P), 2022 WL 2446328, at *3 (S.D. Miss. May 31, 2022); *see Melvin*, 978 F.3d at 52. Compliance with the terms of supervised release and with the law alone is not enough to merit early termination; such conduct is expected and required. *United States v. Taylor*, 729 F. App'x 474, 475 (7th Cir. 2018) ("[M]ere compliance with the terms of supervised release is expected, and without more, insufficient to justify early termination."); *United States v. Seymore*, No. CR 07-358, 2023 WL 3976200, at *1 (E.D. La. June 13, 2023) ("[C]ourts have generally held that something more than compliance with the terms of [supervised release] is required to justify an early termination . . . ." (quoting *United States v. Smith*, No. 10-cr-53-DPJ-FKB, 2014 WL 68796, at *1 (S.D. Miss. Jan. 8, 2014))); *Lynn*, 2022 WL 2446328, at *4 (although the defendant adhered to the conditions of his release, a balancing of the 18 U.S.C. § 3553(a) factors did not support early termination, noting that the defendant "engaged in constant serious criminal behavior when he was given chances before"); *United States v. Sandles*, No. 11-CR-204-PP, 2021 WL 3080995, at *3 (E.D. Wis. July 21, 2021) ("[C]ourts have held 'that the conduct of the defendant necessary to justify early termination should include more than simply following the rules of supervision; otherwise, every defendant who avoided revocation would be eligible for early termination.'" (quoting *United States v. O'Hara*, No. 00-cr-170, 2011 WL 4356322, *3 (E.D. Wis. Sept. 16, 2011))); *United States v. Boudreaux*, No. 2:19-CR-00377-01, 2020 WL 7635708, at *1 (W.D. La. Dec. 22, 2020); *United States v. Pittman*, No. 3:15-CR-221-O(1), 2020 WL 6564724, at *2 (N.D. Tex. Nov. 9, 2020) (finding that the conduct of the defendant did not

5

warrant early termination of supervised release, as the defendant sought relief based on his circumstances and the alleged conduct of others) (citing 18 U.S.C. § 3583(e)(1)); *see United States v. Berger*, No. CR 09-308, 2021 WL 2354517, at *5 (W.D. Pa. June 9, 2021) ("Compliance with the conditions of supervision, including refraining from engaging in criminal conduct and paying restitution, however, is required behavior while serving a term of supervised release."). As courts have observed, "if every defendant who complied with the terms of supervised release were entitled to early termination, 'the exception would swallow the rule.'" *United States v. Kassim*, No. 15 Cr. 554-3 (KPF), 2020 WL 2614760, at *2 (S.D.N.Y. May 22, 2020) (citing *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998)).

While the court need not find extraordinary, compelling, or changed circumstances to justify an early termination of supervised release, this does not mean that such circumstances are irrelevant to ruling on a motion under § 3583(e)(1). *United States v. Ferriero*, No. 13-0592 (ES), 2020 WL 6701469, at *2 (D.N.J. Nov. 13, 2020) (citing *Melvin*, 978 F.3d at 53); *accord United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016). This is because, if a sentence was "sufficient, but not greater than necessary" when first pronounced, pursuant to 18 U.S.C. § 3553(a), it would be expected that something has changed that would justify an early end to a term of supervised release. *Melvin*, 978 F.3d at 53; *United States v. Jackson*, No. 11-55, 2022 WL 2789870, at *2 (W.D. Pa. July 15, 2022); *United States v. Santoro*, No. 21-76 (MAS), 2022 WL 37471, at *2 (D.N.J. Jan. 4, 2022); *Ferriero*, 2020 WL 6701469, at *2. In other words, extraordinary circumstances may be sufficient to justify early termination of a term of supervised release, but they are not necessary for such a termination. *Melvin*, 978 F.3d at 53; *United States v. McClamma*, 676 F. App'x 944, 947 (11th Cir. 2017) ("New or unforeseen circumstances can

6

justify a modification, but such circumstances are not necessary."); *Parisi*, 821 F.3d at 347 (recognizing that "changed circumstances may in some instances justify a modification" of a term of supervision). Nonetheless, "'generally, early termination of supervised release under § 3583(e)(1)' will be proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it." *Melvin*, 978 F.3d at 53 (quoting *Davies*, 746 F. App'x at 89); *United States v. Baptiste*, No. 98-207, 2025 WL 871520, at *1 (E.D. La. Mar. 20, 2025) (noting that early termination is generally warranted "only in cases where the defendant shows changed circumstances, such as exceptionally good behavior" (quoting *United States v. Jones*, No. V-11-21, 2013 WL 2417927, at *1 (S.D. Tex. June 4, 2013))); *Smith*, 2014 WL 68796, at *1.

According to Cabiro's Presentence Report ("PSR"), prepared on February 23, 2021, his offense of conviction entails his possession with intent to distribute a variety of controlled substances—LSD, MDMA, cocaine, heroin, and fentanyl. On February 21, 2020, a Jefferson County Sheriff's deputy conducted a traffic stop on a vehicle being driven by Cabiro for speeding and failing to maintain a single lane. While speaking with Cabiro and his female passenger, the deputy noted that they both appeared nervous. When the deputy asked if there were any guns in the vehicle, Cabiro hesitated and then responded, "No." Cabiro denied the deputy consent to search the vehicle. A canine officer was called to the scene and, after conducting an "open air sniff," alerted to the presence of drugs in the vehicle. A subsequent search of the vehicle revealed two fully loaded Smith & Wesson .38 special revolvers in the center console, a black and gray backpack with a small container containing marijuana wax and several vapes containing THC oil, a gray and white backpack with an Altoids metal container holding methamphetamine, a large plastic bag with a variety of drugs, including ketamine pills, crushed clonazepam pills, 480 doses

of LSD, 97.6 grams of marijuana, 41 Adderall pills, 101.6 grams of psilocybin mushrooms, 121.6 grams of heroin, 48 grams of cocaine, 48.2 grams of MDMA, and a black leather bag holding $10,580 in U.S. currency.  Cabiro signed a Factual Basis and Stipulation in which he admitted to the facts set forth above.  He was held responsible for 97.6 grams of marijuana, 101.6 grams of psilocybin mushrooms, 121.6 grams of heroin, 48 grams of cocaine, 1.235 grams of ketamine, 32.962 net grams of methamphetamine (actual), 5.123 net grams of LSD, 11.18 net grams of tetrahydrocannibinol ("THC"), and 2.342 net grams of clonazepam.

      Cabiro's criminal history includes prior convictions for possession of marijuana, theft, and driving while intoxicated (2x).  Two prior terms of probation were amended before he was ultimately discharged from probation.  He was also arrested for the wrongful use of controlled substances while serving in the U.S. Army and was administratively discharged for drug abuse in 2004.  He was previously married and has two children with his ex-wife, who are now about 13 and 11 years old.  The PSR indicates that Child Protective Services was contacted previously because Cabiro was suspected of being involved in drugs and the welfare of his two children was in question.

      Cabiro reported a long history of poly-substance abuse beginning at age 12, when he first smoked marijuana, which he then used daily until arrested in 2020 for his offense of conviction.  He also consumed alcohol daily from age 16, when he also began using ecstasy and LSD.  He stated that he used ecstasy "a lot" and LSD "sporadically" until his arrest.  Cabiro began using methamphetamine at age 20, which he used daily until 2 years before his arrest, explaining that he used it to self-medicate when he could not afford prescription medication.  He also used heroin a few times from age 31 to the date of his arrest.  Cabiro acknowledged to Probation that he felt

he had a drug problem and that drug treatment would be beneficial. He explained that he consumed a gallon of vodka each week, which would take him about four days. Cabiro advised Probation that he even poured vodka into his feeding tube when he was hospitalized in 2018 after he sustained a head injury in an automobile accident in which he collided with a concrete wall while going approximately 120 mph and not wearing a seat belt. He also has a history of mental health problems since 2018. Cabiro's Judgment contains two Special Conditions of Supervision that specifically address his substance abuse problem:

> You must not possess or consume any alcoholic beverages.
>
> You must participate in a program of testing and treatment for substance abuse and follow the rules and regulations of that program until discharged. The probation officer, in consultation with the treatment provider, will supervise your participation in the program. You must pay any cost associated with treatment and testing.

In this situation, the court finds that Cabiro's post-release conduct does not warrant early termination of his supervised release. Although he appears to have complied with his conditions of release to date by maintaining gainful employment, incurring no new arrests, pending charges, or violation reports, and complying with his conditions of supervision, he identifies no new or exceptional circumstances or needs that would merit early release from supervision. In view of the wide variety and significant quantity of illegal narcotics that were recovered from his vehicle at the time of his arrest, along with the two loaded firearms, as well as his long history of poly-substance abuse, the court is of the opinion that Cabiro should continue to obtain services throughout his three-year term of supervised release to assist him to remain drug-free. Cabiro fails to explain how the conditions of his supervised release limit his employment opportunities, interfere with his family responsibilities, impede any medical or substance abuse treatment, or

9

otherwise impact his daily life in a significant manner. According to Probation, he is currently being supervised on a low-risk caseload, which requires only minimal contact. Cabiro does not clarify how being on supervised release keeps him from furthering his career, achieving additional goals, assisting his family, or engaging in recreational, religious, or volunteer activities. Under the circumstances, the court finds the current conditions of Cabiro's supervised release are not onerous and remain appropriate in view of his offense of conviction and his long history of substance abuse and mental health problems.

While his achievements to date should be commended, continuing Cabiro on supervision will provide him the best opportunity for success in reentry in view of his prior commission of a serious crime involving the possession and distribution of multiple controlled substances, his administrative discharge from the Army for drug abuse, and his history of multiple substance abuse problems. Requiring Cabiro to complete his entire three-year term of supervised release safeguards against the reoccurrence of criminal activity, while imposing only a minimal burden on Cabiro. Generally, early termination of supervised release is not granted unless there are significant medical concerns that are not being addressed, substantial limitations on employment, or extraordinary post-release accomplishments that would warrant such a release. Cabiro does not identify any such circumstances in his motion and is instead seeking early termination of his supervision simply for complying with the conditions of release imposed by the court for the past two years. Thus, although Cabiro appears to be on the right path, the court believes that the completion of his full term of supervised release appropriately reflects the seriousness of his offense of conviction, deters future criminal conduct, and provides needed structure for his continued rehabilitation. *See Lynn*, 2022 WL 2446328, at *4.

> As Probation points out:
>
> Though Mr. Cabiro should be commended for his compliance on supervision thus far, mere compliance with his conditions does not innately warrant early termination as such behavior is expected. According to the offense conduct detailed in the presentence report, Mr. Cabiro refused to allow officers to search his vehicle after a traffic stop and it required a canine unit to be dispatched to the scene to conduct an "open air sniff" of the vehicle which alerted to the presence of drugs. After a subsequent search of the vehicle and lab verification, Mr. Cabiro was found to be in possession with intent to distribute a considerable amount of various illicit drugs, namely 97.6 grams of marijuana, 101.6 grams of Psilocybin Mushrooms, 121.6 grams of heroin, 48 grams of cocaine, 1.235 grams of ketamine (converts to 2.47 units), 32.962 net grams of methamphetamine (actual), 5.123 net grams of D-Lysergic Acid Diethylamide (LSD), 11.8 net grams of Tetrahydrocannabinol (THC), and 2.324 net grams of clonazepam-Schedule IV (converts to 4.684 units). In addition, two fully loaded firearms were discovered in the vehicle and Mr. Cabiro was initially also indicted in Count 2 for Possession of a Firearm in furtherance of a drug trafficking offense. It was later dismissed upon conviction for the instant offense. In addition, his criminal records also consists of previous terms of community supervision that required modification of the conditions due to concerns with alcohol and/or drug use while being supervised. Based on the information provided, it is believed that continuing Mr. Cabiro's supervision term would be in the best interest of the community. As previously mentioned, Mr. Cabiro is being supervised on the low-risk caseload of the Southern District of Texas, which should require minimal intervention by the probation office, while still providing accountability for his actions and access to beneficial services if deemed necessary. Remaining on supervision is not believed to be a hindrance on his ability to further his employment or life goals. As such, the U.S. Probation Office in the Eastern District of Texas respectfully recommends the Court deny the motion and allow Mr. Cabiro to continue supervision as ordered.

The court concurs with the assessment of the situation by the Probation Office for the Eastern District of Texas and finds that the early termination of Cabiro's three-year term of supervised release would not be in the interest of justice.

III.   Conclusion

In accordance with the foregoing, Cabiro's Request for Early Termination of Supervised Release (#58) is DENIED.

11

SIGNED at Beaumont, Texas, this 27th day of January, 2026.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE